UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONY GORDON,

                Plaintiff,        Civil Action No. 13-14881
                                   Honorable Linda V. Parker
                                   Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [8, 12]

Plaintiff Tony Gordon ("Gordon") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [8, 12] which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

### I.    RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Gordon was not disabled under the Act prior to his date last insured (June 30, 2010). Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [12] be GRANTED, Gordon's Motion for Summary Judgment [8] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

**II.    REPORT**

    **A.    Procedural History**

On June 30, 2011, Gordon filed an application for DIB, alleging a disability onset date of March 10, 2008. (Tr. 116-22). This application was denied initially on October 24, 2011. (Tr. 62-66). Gordon filed a timely request for an administrative hearing, which was held on June 20, 2012, before ALJ Regina Sobrino. (Tr. 31-52). Gordon, who was represented by attorney Aaron Lemmens, testified at the hearing, as did vocational expert Michelle Robb. (*Id.*). On September 26, 2012, the ALJ issued a written decision finding that Gordon was not disabled during the relevant time period. (Tr. 19-26). On November 5, 2013, the Appeals Council denied review. (Tr. 1-5). Gordon filed for judicial review of the final decision on November 26, 2013. (Doc. #1).

    **B.    Framework for Disability Determinations**

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months,

>and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
>Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### C. Background

#### 1. Plaintiff's Reports and Testimony

At the time of the administrative hearing, Gordon was 51 years old. (Tr. 38). He lived in a house with his mother. (Tr. 38, 156). He dropped out of school in the eleventh grade. (Tr. 38). Gordon testified that he had not worked since 2008 because he "cannot stand on [his] legs, and [his] back goes out." (*Id.*). Gordon further testified that he still has a bullet lodged in his left leg, and for several years, that leg has "collapsed" a few times a month. (Tr. 38-39). He claims that, some days, he "can't even get out of the bed" because he is in so much pain (a 10/10 on the pain scale). (Tr. 38, 48). However, Gordon also testified that he can stand for 30 minutes, sit for less than an hour, walk two or three blocks, and lift 30 pounds. (Tr. 40-41). Prior to his date last insured (June 30, 2010), he did not use a cane at all, nor did he take any medication. (Tr. 40, 44). He has no difficulty reaching, but he experiences pain when he bends at the waist, bends his knees, or crouches down. (Tr. 41-42). For some period of time, he received injections for back

pain, but he testified that his pain worsened with this treatment. (Tr. 45). He also underwent physical therapy, which provided some benefit. (*Id.*). In addition, Gordon indicated that he has a "heart condition," which causes chest pain. (Tr. 156). According to Gordon, he prepares his own meals and does light chores. (Tr. 42, 158). He does not drive or do yard work, but he enjoys playing chess. (Tr. 43, 160).

### 2.  *Medical Evidence*

The Court has thoroughly reviewed Gordon's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3.  *Vocational Expert's Testimony*

Michelle Robb testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 48-50). The ALJ asked the VE to imagine a claimant of Gordon's age, education, and work experience, who could perform sedentary work, with the following additional limitations: no climbing of ladders or stairs; no kneeling, crouching, or crawling; only occasional stooping; no exposure to hazards or vibration; no need to use foot or leg controls; and no exposure to extremes of temperature or humidity. (Tr. 48-49). The VE testified that the hypothetical individual would be capable of working in the jobs of information clerk (1,200 jobs in the lower peninsula of Michigan), bench assembler (2,500 jobs), and packer (1,500 jobs). (Tr. 49). Upon further questioning by the ALJ, the VE then testified that the hypothetical individual could still perform these jobs, albeit at slightly reduced numbers, if he needed the opportunity to alternate position for up to five minutes every thirty minutes. (Tr. 49-50).

### D.  **The ALJ's Findings**

Following the five-step sequential analysis, the ALJ found that Gordon was not disabled

under the Act prior to his date last insured (June 30, 2010). At Step One, the ALJ found that Gordon did not engage in substantial gainful activity during the relevant time period. (Tr. 21). At Step Two, the ALJ found that Gordon had the severe impairments of degenerative joint disease, degenerative disc disease, and hypertensive heart disease. (*Id.*). At Step Three, the ALJ found that Gordon's impairments, whether considered alone or in combination, did not meet or medically equal a listed impairment. (Tr. 21-22).

The ALJ then assessed Gordon's residual functional capacity ("RFC"), concluding that, during the relevant period of time, he was capable of performing sedentary work, with the following additional limitations: the opportunity to alternate position for up to five minutes approximately every thirty minutes; no climbing of ladders or stairs; no kneeling, crouching, or crawling; only occasional stooping; no exposure to hazards or vibration; and no exposure to extremes of temperature or humidity. (Tr. 22-25).

At Step Four, the ALJ determined that Gordon had no past relevant work. (Tr. 25). At Step Five, the ALJ concluded, based in part on the VE's testimony, that, through his date last insured, Gordon was capable of performing a significant number of jobs that existed in the national economy. (Tr. 25-26). As a result, the ALJ concluded that Gordon was not disabled under the Act during the relevant period of time. (Tr. 26).

E. **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d

591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter

6

differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F. Analysis**

*1. Waiver*

It is difficult to discern Gordon's specific arguments in support of his motion for summary judgment. His motion consists almost entirely of a compilation of quotations of black letter case law, with virtually no accompanying analysis or application of that law to the facts of his case. For example, Gordon asserts (in a heading in his brief) that the ALJ erred in "failing to properly evaluate the medical records and opinions of evidence and, thereby, formed an inaccurate hypothetical that did not accurately portray [his] impairments." (Doc. #8 at 7). But, Gordon does not explain with any particularity whatsoever which medical records or opinions the ALJ purportedly "fail[ed] to properly evaluate." (*Id.*). Indeed, although Gordon provides a factual recitation of certain portions of his medical record (*id.* at 9), he does not actually allege that the ALJ erred in evaluating any of the medical evidence. There is simply no suggestion that the ALJ overlooked any medical evidence or erred in considering such evidence. Rather, Gordon relies almost entirely on his own testimony, which the ALJ is required to *weigh* as part of his overall analysis, not blindly accept, as Gordon suggests. *See infra* at 9. Gordon's brief is very similar to one his counsel filed in another matter, *Burger v. Comm'r of Soc. Sec.*, 2013 WL 2285375 (E.D. Mich. May 23, 2013), which the court found to present no non-waived issue. And, on March 24, 2014, Judge Rosen issued a scathing commentary on Gordon's counsel's

7

approach to his clients' summary judgment briefs:

> … [T]his reliance on conclusory assertions and absence of developed argument has become the calling card of Plaintiff's counsel in a number of recent Social Security cases, and nearly every Magistrate Judge in this District has expressed this concern with the work product of Plaintiff's counsel.  In light of this lamentable record of filing one-size-fits-all briefs and inviting the Judges of this District to formulate arguments and search the record on his clients' behalf, Plaintiff's counsel is strongly cautioned that this Court will carefully examine his submissions in future suits to ensure that they advance properly supported arguments that rest upon (and cite to) the facts of a particular case.  Failure to adhere to these standards will result in the imposition of sanctions and possible referral of counsel for disciplinary proceedings.

*Fielder v. Comm'r of Soc. Sec.*, 2014 WL 1207865, at *1, n. 1 (E.D. Mich. Mar. 24, 2014) (internal citations omitted).  The Court notes that Gordon's brief in this case – which was filed <u>after</u> issuance of the *Fielder* opinion – is yet another "one-size-fits-all" brief, containing virtually the same "conclusory allegations" and "absence of developed argument" that Chief Judge Rosen found wholly insufficient in *Fielder*.  Here, then, the Court could find that Gordon has waived any challenges he has to the ALJ's determination.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotations omitted).  Nonetheless, for the sake of completeness, the Court will endeavor to address the only argument alluded to by Gordon.

    2.    *Credibility*

Apart from citing to boilerplate case law concerning the ALJ's obligations in relying on VE testimony and assessing medical source opinions – without making *any* attempt to connect that law to the facts of this case – the only "argument" Gordon advances (which, interestingly enough, is not even mentioned in the single heading contained in his brief) is that the ALJ erred in declining to fully credit his testimony that he had work preclusive limitations during the

8

relevant time period. (Doc. #8 at 9-10). In making this assertion, Gordon ignores the reasons articulated by the ALJ for discounting his credibility and does not cite any medical evidence that the ALJ failed to properly consider. As set forth below, the ALJ reasonably discounted Gordon's allegations of disabling limitations because they were inconsistent with the objective medical evidence and the record as a whole. (Tr. 22-25).

As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptom is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians … and any other relevant evidence in the case record" to determine if the claimant's claims regarding the severity of his symptoms are credible. *Soc. Sec. Rul.* 96-7, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. §404.1529.

Here, the ALJ adequately discussed the objective medical evidence regarding Gordon's back and leg impairments and reasonably explained why such evidence compelled a finding that Gordon's allegations of disability prior to his date last insured were not fully credible. (Tr. 23-

25). For example, the ALJ noted that Gordon's treatment for his degenerative joint disease and degenerative disc disease was conservative, consisting only of medication (namely, non-prescription Tylenol) through his date last insured. (Tr. 25). Indeed, when Gordon presented to the Emergency Department at McLaren Hospital with dental problems in May 2010, he reported that he was taking no medications. (Tr. 25 (citing Tr. 194)). The ALJ then noted that, after this Emergency Department visit, the next record of treatment is not until June 2011 – more than one year later and almost one year after the expiration of insured status – when Gordon sought treatment at the Urban Health and Wellness Clinic for complaints of chronic low back and left leg pain. (Tr. 23 (citing Tr. 217-18)). Gordon did not begin physical therapy until July 2011 (more than one year after his date last insured), and he did not pursue epidural steroid injections until March 2012. (Tr. 25, 222, 284-91). A lumbar spine x-ray performed in September 2011 showed only mild degenerative joint disease. (Tr. 23 (citing Tr. 272)).[1]

With respect to Gordon's hypertensive heart disease, the ALJ also explained why the objective medical evidence weighed against a finding that Gordon's allegations of disability prior to his date last insured were not fully credible. (Tr. 24-25). Specifically, the ALJ noted that a cardiovascular examination in October 2008 was within normal limits. (Tr. 24 (citing Tr. 207)). In addition, Gordon had an echocardiogram on July 6, 2011 – more than one year after the date last insured – that showed a normal ejection fraction of 75-80%, normal ventricular

---

[1] A lumbar spine MRI performed on July 2, 2012, revealed multilevel discogenic and spondylitic changes, with mild to moderate central canal stenosis at the L3-L4 level and marked central canal stenosis at L4-L5, along with effacement of the bilateral exiting L4 and L5 nerve roots in the respective exit foramina. (Tr. 24 (citing Tr. 332)). However, this MRI – which was performed more than <u>two years after Gordon's date last insured</u> – simply is not relevant to the disability determination in this case. *See, e.g., Welker v. Comm'r of Soc. Sec.*, 2010 WL 1257937, at *2 (E.D. Mich. Mar. 29, 2010) (quoting *Henley v. Comm'r of Soc. Sec.*, 58 F.3d 210, 213 (6th Cir. 1995) ("The administrative law judge properly limited consideration of [petitioner's] condition to the last date of his insurability …. When one loses insured status, one is simply no longer eligible for benefits for disability arising thereafter.")).

10

sizes, and only mild aortic stenosis and regurgitation. (Tr. 24 (citing Tr. 213-14)). A December 2011 exercise stress echocardiogram was normal. (Tr. 24 (citing Tr. 265-66)).

In light of the foregoing evidence, the ALJ's RFC finding adequately accommodated Gordon's back, leg, and heart impairments. (Tr. 22-25). The ALJ concluded that, during the relevant period of time, Gordon was capable of performing sedentary work, with the following additional limitations: the opportunity to alternate position for up to five minutes approximately every thirty minutes; no climbing of ladders or stairs; no kneeling, crouching, or crawling; only occasional stooping; no exposure to hazards or vibration; and no exposure to extremes of temperature or humidity. (*Id.*). Gordon has pointed to no medical evidence justifying greater limitations than those the ALJ identified.

Rather, in the face of all of this substantial evidence, Gordon relies primarily on own his testimony and his subjective complaints to physicians. (Doc. #8 at 9-10). However, even where there is "objective medical evidence of an underlying medical condition … an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r. of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). In sum, while Gordon might disagree with the ALJ's credibility assessment, he has failed to articulate a basis for overturning that finding, particularly in light of the great weight and deference an ALJ's credibility finding is due on review. *See Kirk,* 667 F.2d at 538; *Smith*, 307 F.3d at 379 (ALJ's credibility determination will not be disturbed "absent compelling reason"). Here, where the ALJ gave a reasonable explanation for discounting Gordon's credibility, and that explanation is supported by substantial evidence, his credibility finding should not be disturbed.

For all of the above reasons, and upon an independent review of the entire record, the

Court concludes that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Gordon's Motion for Summary Judgment **[8]** be **DENIED**, the Commissioner's Motion **[12]** be **GRANTED**, and this case be **AFFIRMED**.

Dated: November 24, 2014  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
  United States Magistrate Judge

### NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 24, 2014.

  s/Eddrey O. Butts
  EDDREY O. BUTTS
  Case Manager